■ 29 W. 25TH STREET PARKING CORP. et al., Respondents, v PENN POST PARKING, INC., Appellant. — Resettled judgment, Supreme Court, New York County (Bowman, J.), entered February 24, 1984, which, *inter alia,* compelled defendant to consent to a lease assignment and to an extension of the lease term, modified, on the law and the facts, without costs or disbursements, to the extent of deleting the provision for a lease extension, and, except as thus modified, affirmed.

For 18 years, under leases, the last of which expired March 31, 1980, West 25th Street operated a parking lot on defendant's property at West 25th Street. Defendant decided not to renew

plaintiff's lease and, on November 14, 1979, entered into a new lease with another corporation, 29 West, which was to take occupancy on April 1, 1980. When plaintiff refused to surrender possession on March 31, 1980, defendant commenced a holdover proceeding. The parties thereafter entered into a stipulation pursuant to which plaintiff agreed to vacate the premises by December 31, 1980. As a result of this disposition of the holdover proceeding and by express provision of the new lease, the 10-year lease term was not to commence until January 1, 1981, the date 29 West would obtain possession of the premises. In November of 1980, 29 West became a wholly owned subsidiary of plaintiff when plaintiff purchased all of its stock for $100,000. Defendant's lease with 29 West did not prohibit such a sale, which was, as Trial Term found, lawful and proper. The lease also provided that 29 West could assign its interest in the lease with defendant's written consent, which was "not [to] be unreasonably withheld". On June 30, 1981, 29 West requested defendant's permission to assign the lease to plaintiff, its corporate parent. In reality the consent, if granted, would not alter the operation or income production of the property since the parking lot was being run by the same individuals as had been running it for years. The request was made to simplify the corporate structure and produce certain favorable tax consequences. In any event, defendant refused to consent and plaintiff commenced this action to compel its consent and to modify the lease to provide for a full 10-year term commencing December 1, 1980. After a nonjury trial, Trial Term granted plaintiff both aspects of the relief sought. We modify to strike the provision directing defendant to extend the lease term an additional eight months.

Trial Term, after hearing all the evidence, found that defendant's refusal to consent to the assignment was, under all the circumstances, unreasonable. It rejected, as "conclusory", defendant's proffered testimony of late rental payments under the expired lease by plaintiff's principal, who was currently paying the rent promptly on behalf of 29 West and who, with or without an assignment, would be continuing to pay the rent. Apparently Trial Term properly viewed this dispute for what it was — a request to make a "paper change" in the tenancy for limited tax purposes, which request was unreasonably being opposed by defendant for personal reasons. We see no reason to disturb Trial Term's factual findings which, made after viewing the witnesses and assessing their credibility, should be accorded "the greatest weight". (Borne Chem. Co. v Dictrow, 83 AD2d 595, 598.) Unless it is obvious that the trial court's findings and conclusions are against the weight of the evidence or contrary to

law, its determination should be affirmed. (See *La Vire v State of New York,* 91 AD2d 749.)

The record, however, does not support Trial Term's determination awarding plaintiff an eight-month extension of the assigned lease. In so ruling, Trial Term ignored the fact that the only reason defendant was unable to give possession to 29 West on April 1, 1980 was that plaintiff was holding over. "[A] party, on whom depends a condition precedent, who actively hinders or prevents its occurrence, cannot rely on the failure of the condition." (*Schefler v Livestock & Cas. Ins. Co.,* 44 AD2d 811.) Accordingly, we modify to eliminate the provision awarding plaintiff an extension of the lease. Concur — Sullivan, Ross and Bloom, JJ. Kupferman, J. P., dissents in part in a memorandum and Silverman, J., dissents in a separate memorandum, as follows:

Kupferman, J. P. (dissenting in part). I would reverse the judgment insofar as it directs the defendant landlord to consent to the assignment of the lease here involved.

The facts are set forth in the dissenting opinion of Silverman, J. While the previous tenant could have purchased the stock of the new tenant and in that way obtain control of the new lease term, the landlord was within its rights in refusing to consent to a formal assignment. The old tenant having held over at the expiration of its lease, it was not unreasonable for the landlord to refuse to consent to an assignment to the old tenant, with whom the landlord no longer wished to do business.

The majority opinion recognizes this fact in its determination that the tenants should not have the benefit of an extended term, which came about because of the failure to vacate.

Silverman, J. (dissenting). I would reverse the judgment appealed from, insofar as it directs defendant landlord to consent to the assignment of the lease here involved, and would declare in favor of the landlord that the landlord need not consent to such assignment.

Plaintiff W. 25th Street Parking Corp. (hereinafter Old Tenant Corp.) was the tenant of a parking lot under a lease with landlord defendant Penn Post Parking, Inc. (hereinafter landlord). The lease expired on March 31, 1980. The landlord refused to renew the lease and negotiated and signed a new 10-year lease with another corporation, 29 W. 25th Street Parking Corp. (hereinafter New Tenant Corp.). The lease with New Tenant Corp. contained a provision postponing its commencement date until the landlord could obtain possession.

Old Tenant Corp. refused to vacate the premises at the expiration of its lease. The landlord brought a summary holdover proceeding, which resulted in a stipulation in the form of an extension that Old Tenant Corp. would vacate the premises at the end of the year. Thereafter, Old Tenant Corp. brought the stock of New Tenant Corp. for $100,000. New Tenant Corp. thus became a wholly owned subsidiary of Old Tenant Corp. So far as appears, there was no prior connection between Old Tenant Corp. and New Tenant Corp. New Tenant Corp. was apparently a shell corporation, which according to the warranties in the contract of sale had conducted no business transaction other than entry into the lease. Shortly thereafter, Old Tenant Corp. caused New Tenant Corp. to be dissolved, arranged for an assignment of the lease from New Tenant Corp. to Old Tenant Corp. and requested the landlord to consent to the assignment. The landlord refused to consent.

The lease with New Tenant Corp. provided that the tenant could assign the lease upon notification to the landlord and written approval by the landlord "which written approval shall not be unreasonably withheld or delayed."

In my view the refusal of the landlord to consent to the assignment to Old Tenant Corp. was not unreasonable. To begin with, it appears without contradiction, from the testimony of Old Tenant Corp.'s principal, that although Old Tenant Corp.'s lease required rent to be paid on the first of every month, Old Tenant Corp. always "sent out our checks on the 10th" despite the complaints and statements of landlord's principal that she wanted rent on the first. "[O]ur [Old Tenant Corp.] bookkeeping practices was to send all the checks out on the 10th." Furthermore, Old Tenant Corp. had refused to vacate the premises at the expiration of Old Tenant Corp.'s lease so that landlord had to bring a holdover eviction proceeding. In the circumstances, it was not unreasonable (within the meaning of the lease provision against unreasonably withholding consent) for the landlord to refuse to consent to the assignment to Old Tenant Corp., with whom it had this unsatisfactory lease-related experience.

If, therefore, this had been a situation in which Old Tenant Corp. had simply purchased the lease from New Tenant Corp. for $100,000 and requested the landlord's consent to the assignment, the landlord would have been within its legal right to refuse its consent. But that is precisely the effect of what happened here. New Tenant Corp. was, as I have said, a shell corporation with no assets except the lease. Obviously all that Old Tenant Corp. sought and obtained for $100,000 was the lease. Done directly, this would have been a transaction to which landlord could withhold its consent.

The argument on behalf of plaintiffs tenants is that the mechanics by which the transaction was done, i.e., splitting it into two parts, overcame this difficulty. That argument is that landlord could not have prevented New Tenant Corp. from buying the stock of Old Tenant Corp., and thus the economic situation would have been the same as if there had been a direct assignment, and, therefore, after that it was unreasonable to refuse to consent to the formal assignment.

The argument is a little too facile. It overlooks the complete inconsistency of the premises relied on to sustain each part of the transaction. The purchase of New Tenant Corp.'s stock by Old Tenant Corp. is said to be immune from attack for the reason that it does not matter that the parties in interest have changed so that Old Tenant Corp. is now the sole stockholder of New Tenant Corp., and the principal of Old Tenant Corp. is the principal of New Tenant Corp.; all that matters is that the corporate identity of the tenant has not changed; the same corporate entity — New Tenant Corp. — is still the tenant. The request for assignment is sought to be sustained on the premise that it does not matter that Old Tenant Corp. — the assignee tenant — is a different corporate entity from New Tenant Corp.; all that matters is that now (after the purchase of New Tenant Corp.'s stock) the parties in interest and the principals of the two tenant corporations are the same.

Plaintiffs should not be allowed to disregard substance for form to sustain the first half of the transaction and then to switch to disregarding form for substance to sustain the second half of the transaction — all to the end of doing indirectly that which could not be done directly.